|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

UNITED STATES OF AMERICA § 
§ 
*versus* § CASE NO. 9:25-CR-8 
§ 
CLIFFORD HENISER, JR. §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Clifford Heniser, Jr.'s ("Heniser") Opposed Motion to Dismiss Indictment (#20), wherein Heniser asserts that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him. The Government filed a response in opposition (#21). Having considered the motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

The following allegations come from the Affidavit in Support of a Complaint (#2) in this case. On March 15, 2025, Heniser entered the Houston County Sheriff's Office ("HCSO"), located in Crockett, Texas, and requested the HCSO's "federal reports." After being told that he would be required to wait to for a deputy, Heniser reportedly became visibly angry and exited the building. Dispatchers then observed Heniser go to his truck and reenter the lobby with a firearm. Heniser again exited the HCSO and fired multiple rounds of ammunition outside. Law enforcement officers responded to the disturbance and located Heniser in the HCSO parking lot. At first, Heniser refused to comply with the officers' orders to put his firearm down. Instead, he stated that his rights were violated and told the officers to put *their* firearms down. Heniser further told the officers that law enforcement was not doing a good job arresting illegal immigrants and drug dealers. The officers continued to order Heniser to put down his firearm, and Heniser

eventually complied. The officers arrested Heniser on site and recovered two pistols and four rifle magazines. In addition, the officers searched the area around the HSCO and discovered 31 spent cartridge casings. Officers obtained a search warrant for Heniser's vehicle and found numerous rounds of ammunition. On April 2, 2025, a federal grand jury in the Eastern District of Texas returned a single-count Indictment (#9) charging Heniser with possession of a firearm by a prohibited person (convicted felon). Heniser is currently set for trial on September 15, 2025 (#24).

Heniser contends that his predicate offense for the pending § 922(g)(1) charge is a non-violent state jail felony for theft.[1] Heniser concedes that his prior conviction is classified as a felony pursuant to § 922(g)(1) because it is punishable by imprisonment for a term exceeding one year. Heniser contends, however, that the nature of his predicate offense does not suffice to strip him of his rights under the Second Amendment.

II.    Analysis

    A.    Dismissal of Indictment

Federal Rule of Criminal Procedure 12(b)(3)(B) permits a court to dismiss a defective indictment. *See United States v. Patino*, 758 F. Supp. 3d 664, 666 (W.D. Tex. 2024). An indictment predicated on a statute that is unconstitutional is defective and, thus, must be dismissed. *United States v. Barber*, No. 4:20-CR-384-SDJ, 2023 WL 1073667, at *2 (E.D. Tex. Jan. 27,

---

[1] Specifically, on November 30, 2010, a grand jury for the State of Texas returned a two-count indictment, charging Heniser in Count One with theft of property greater than or equal to $1,500 but less than $20,000 (a felony), and in Count Two with committing the offense with the intent to establish, maintain, or participate in a combination or in the profits of a combination who collaborated in carrying on said criminal activity. Heniser pleaded guilty to Count One, and Count Two was dismissed. On June 6, 2011, the State court sentenced Heniser to five years' deferred adjudication community supervision. Subsequently, Heniser's community supervision was revoked, and he was sentenced to twelve months' incarceration.

2023) ("[A]n indictment premised on a statute that is unconstitutional must be dismissed."); *United States v. Brown*, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010); *see In re Civil Rights Cases*, 109 U.S. 3, 8-9 (1883) ("An indictment is defective if it alleges a violation of an unconstitutional statute.").

      B.    <u>Second Amendment Challenge</u>

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court refined its approach to analyzing whether a challenged law impinges upon a right protected by the Second Amendment. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). Under *Bruen*, if the challenged law impinges upon a right protected by the Second Amendment, the Constitution presumptively protects that conduct and "the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.'" *United States v. Rahimi*, 602 U.S. 680, 689 (2024) (quoting *Bruen*, 597 U.S. at 24). Specifically, the Court stated:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 18 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

The parties do not dispute that 18 U.S.C. § 922(g)(1) covers Heniser's conduct. *See United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024), *cert. denied*, No. 24-6625, 2025 WL 1727419 (U.S. June 23, 2025) (holding that "[t]he plain text of the Second Amendment covers the

conduct prohibited by § 922(g)(1)"). Accordingly, "[t]he burden . . . shifts to the government to demonstrate that regulating [Heniser's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id*. at 467 (quoting *Bruen*, 597 U.S. at 24). "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.'" *Id*. (quoting *Bruen*, 597 U.S. at 30). "Evidence must be 'relevantly similar' to the challenged law." *Id*. (quoting *Bruen*, 597 U.S. at 29). In assessing similarity, the court considers "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id*. (quoting *Bruen*, 597 U.S. at 29).

The Government avers that Heniser's as-applied challenge is foreclosed by the holding of the United States Court of Appeals for the Fifth Circuit in *United States v. Diaz* because Heniser has a prior felony conviction for theft. 116 F.4th at 472. The court agrees. As noted by the Government, in *Diaz*, the Fifth Circuit held that "[a]t the time of the Second Amendment's ratification, those . . . guilty of certain crimes—like theft—were punished permanently and severely. And permanent disarmament was a part of our country's arsenal of available punishments at that time." *Id*. Accordingly, the Fifth Circuit held that § 922(g)(1) was constitutional as applied in the case of Diaz, whose pertinent criminal history included a prior conviction for vehicle theft.[2] *Id*. Indeed, in *United States v. Schnur*, the Fifth Circuit clarified "[b]ecause theft was a felony at the Founding and 'would have led to capital punishment or estate

---

[2] Diaz also had prior felony convictions for evading arrest and possessing a firearm as a felon. *Id*. at 467. The Fifth Circuit, however, focused on Diaz's vehicle theft conviction: "[A]t least one of the predicate crimes that Diaz's § 922(g)(1) conviction relies on—theft—was a felony and thus would have led to capital punishment or estate forfeiture. *Id*. at 469-70.

forfeiture' at that time, we reasoned that disarming the defendant who had been convicted of 'car theft' fits within our Nation's tradition of regulating firearms." *United States v. Schnur*, 132 F.4th 863, 870-71 (5th Cir. 2025).

Heniser correctly contends that *Diaz* did "not suggest that all felons may be disarmed under the Second Amendment."[3] In that vein, Heniser attempts to distinguish his predicate offense of theft from that of Diaz's predicate offense of vehicle theft. Heniser describes his prior felony conviction as a non-violent property offense that "involved unlawfully taking miscellaneous personal property such as sprinklers, shoes, a toy rocking horse, and a coat from [a] Tractor Supply employee without their effective consent." The Fifth Circuit, however, has consistently recognized "theft" as one of "three categories of offenses that doom a defendant's as-applied challenge to [§ 922](g)(1)."[4] *Kimble*, 2025 WL 1793832 at *3; *see, e.g.*, *Hemphill*, 2025 WL 1898366, at *1 ("*Diaz* also forecloses an as-applied challenge by an individual convicted of 'theft-related' offenses such as robbery and burglary."); *United States v. Lopez*, No. 24-50182, 2025 WL 1604510, at *2 (5th Cir. June 6, 2025) (holding that because the defendant had a predicate conviction for burglary of a habitation, "*Diaz* likewise forecloses his as-applied challenge" to § 922(g)(1)); *United States v. Medrano*, No. 23-10713, 2025 WL 915406, at *1 (5th Cir. Mar. 26, 2025) ("[T]he court in *Diaz* concluded § 922(g)(1) was constitutional as applied to

---

[3] In fact, the *Diaz* Court noted, "Our opinion today does not foreclose future as-applied challenges by defendants with different predicate convictions." *Diaz*, 116 F.4th at 458 n.4. As stated above, however, the Fifth Circuit has repeatedly concluded that *Diaz* forecloses an as-applied challenge by an individual convicted of "theft-related" offenses. *See, e.g., United States v. Hemphill*, No. 24-50527, 2025 WL 1898366, at *1 (5th Cir. July 9, 2025).

[4] The three categories include: "theft, violence, and violating the terms of one's release by possessing arms while on parole." *United States v. Kimble*, ___ F.4th ___, No. 23-50874, 2025 WL 1793832, at *3 (5th Cir. June 30, 2025).

defendants with underlying felony convictions involving theft."); *United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *2 (5th Cir. Oct. 10, 2024), *cert. denied*, No. 24-6497, 2025 WL 1787754 (U.S. June 30, 2025) (holding that *Diaz* foreclosed the defendant's as-applied challenge to § 922(g)(1) because the defendant had a prior felony conviction for theft); *Diaz*, 116 F.4th at 472 (holding that Diaz's as-applied challenge to § 922(g)(1) failed because theft was historically punished permanently and severely, and permanent disarmament was part of our country's arsenal of available punishment).

Heniser emphasizes the non-violent nature of his theft conviction and cites to the Supreme Court's opinion in *Rahimi* to support his contention that a defendant's predicate offense must carry some degree of dangerousness to justify permanent disarmament under § 922(g)(1). In *Rahimi*, the Supreme Court held that § 922(g)(8)—which prohibits an individual from possessing a firearm while subject to a domestic violence restraining order—does not violate the Second Amendment, facially or as applied to *Rahimi*, because "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. As the Government observes, "[t]he Supreme Court based this decision on the Nation's firearm laws that have included provisions preventing individuals who threaten physical harm to others from misusing firearms—consistent with the Second Amendment. *Rahimi* does not address the Nation's history of punishing those convicted of felonious theft." #21 at n.1.

In contrast, in *Diaz*, the Fifth Circuit reviewed a challenge to § 922(g)(1) and explicitly noted that Diaz's underlying conviction "do[es] not inherently involve a threat of violence." *Diaz*, 116 F.4th at 471 n.5. Furthermore, in *Schnur*, the Fifth Circuit first considered the defendant's prior conviction for aggravated battery, concluding that the Nation's historical tradition of

6

disarming individuals like Schnur "whose underlying conviction stemmed from the threat and commission of violence" negated the as-applied challenge to § 922(g)(1). The court went on, however, to address Schnur's prior convictions for robbery and burglary separately. The court explained that these "two theft-related felony convictions" also foreclosed Schnur's as-applied challenge. Finally, the Fifth Circuit has stated "our caselaw establishes that if a defendant's predicate felony involves theft *or* violence, his as-applied challenge to § 922(g)(1) will fail." *Kimble*, 2025 WL 1793832, at *3 (emphasis added)). Accordingly, Heniser's contention that a predicate offense must possess an element of dangerousness to survive an as-applied challenge to § 922(g)(1) is without merit.

Finally, while Heniser agrees that "Founding-era punishments for property crimes such as theft were severe whipping, branding, fines, imprisonment, even death in extreme cases," he notes "they never included firearm disarmament." In *Diaz*, the Fifth Circuit considered a similar argument and concluded that "'[t]aken together,' laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to Diaz." *Diaz*, 116 F.4th at 471. Thus, because theft was punished permanently and severely at the time of the Founding and permanent disarmament was a part of our country's arsenal of available punishments at that time, the Government has met its burden of showing that the application of § 922(g)(1) to Heniser is consistent with the Nation's historical tradition of firearm regulation. *Id*. at 472. "Because applying § 922(g)(1) to [Heniser] 'fits neatly in this tradition,' it is constitutional as applied . . . ." *Id*.

III. <u>Conclusion</u>

Heniser's as-applied challenge to § 922(g)(1) is foreclosed by Fifth Circuit precedent. Accordingly, Heniser's Opposed Motion to Dismiss Indictment (#20) is DENIED.

SIGNED at Beaumont, Texas, this 23rd day of July, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE